USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 1 8 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THE ESTATE OF MICHAEL HEISER, deceased, et al.,

                        Petitioners,

                      -v-

HSBC BANK USA, N.A.,

                        Respondent.

11-cv-1607 (KBF)

------------------------------------------------------------------X
THE ESTATE OF MICHAEL HEISER, deceased, et al.,

                        Petitioners,

                      -v-

NORDEA BANK FINLAND, PLC,

                        Respondent.

11-cv-1610 (KBF)

OPINION & ORDER

------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

       Petitioners—family members and personal representatives of the estates of U.S. Air Force officers and airmen killed in the June 25, 1996 terrorist bombing of the Khobar Towers in Saudi Arabia—hold an unsatisfied judgment against the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security, and the Iranian Islamic Revolutionary Guard Corps (the "judgment debtors"). On March 8, 2011, petitioners filed two petitions seeking orders compelling HSBC Bank USA, N.A. ("HSBC") and Nordea Bank Finland, PLC ("Nordea" and, collectively with HSBC, "respondents" or the "respondent banks") to turn over the proceeds of

certain electronic funds transfers ("EFTs") that were blocked pursuant to sanctions regulations of the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"). (ECF No. 1 in 11-cv-1607; ECF No. 1 in 11-cv-1610.) After amending their petitions (ECF No. 23 in 11-cv-1607; ECF No. 18 in 11-cv-1610), petitioners filed three motions for summary judgment and turnover orders pursuant to § 1610(g) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610(g); § 201 of the Terrorism Risk Insurance Act ("TRIA"), Pub L. No. 107-297, 116 Stat. 2322 (2002); and N.Y. C.P.L.R. §§ 5225 and 5227. (ECF Nos. 38 and 62 in 11-cv-1607; ECF No. 23 in 11-cv-1610.)

On February 11, 2013, the Court issued an order holding these motions in abeyance pending the Second Circuit's resolution of the appeals in <u>Hausler v. JPMorgan Chase Bank, N.A.</u>, 845 F. Supp. 2d 553 (S.D.N.Y. 2012), and <u>Calderon-Cardona v. JPMorgan Chase Bank, N.A.</u>, 867 F. Supp. 2d 389 (S.D.N.Y. 2011). (ECF No. 82 in 11-cv-1607; ECF No. 45 in 11-cv-1610.) The Second Circuit issued its decisions in <u>Calderon-Cardona</u> and <u>Hausler</u> on October 23, 2014 and October 27, 2014, respectively. On November 10, 2014, petitioners and HSBC made additional submissions to the Court addressing the effect of these decisions on this case. (ECF Nos. 102 and 103 in 11-cv-1607; ECF No. 59 in 11-cv-1610.) For the reasons set forth below, petitioners' motions for summary judgment and turnover orders are DENIED.

I.  LEGAL STANDARDS

   A.  Summary Judgment

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

   B.  The FSIA and the TRIA

Generally, property of a foreign sovereign is immune from attachment and execution. See 28 U.S.C. § 1609. FSIA § 1610(g) and TRIA § 201 provide two exceptions. FSIA § 1610(g) allows plaintiffs to attach and execute against property of a foreign state to satisfy a judgment obtained under § 1605A.[1] Section 1610(g) states:

---

[1] FSIA § 1605A, entitled "Terrorism exception to the jurisdictional immunity of a foreign state," provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

> Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section . . . .

28 U.S.C. § 1610(g)(1). TRIA § 201 allows plaintiffs to attach and execute against blocked assets of terrorist parties. Section 201(a) states:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy any judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a).

## II. DISCUSSION

Petitioners' motions must be denied because, under the Second Circuit's decisions in Calderon-Cardona and Hausler, FSIA § 1610(g) and TRIA § 201 do not authorize judgment creditors like petitioners to attach and execute against the proceeds of EFTs that do not qualify as property of the judgment debtors under state law.

In Calderon-Cardona v. Bank of New York Mellon, family members of victims of state-sponsored terrorism sought to enforce a judgment obtained against the Democratic People's Republic of Korea ("North Korea") by attaching blocked EFTs pursuant to TRIA § 201 and FSIA § 1610(g). No. 12-0075, 2014 WL 5368880, at *1

---

28 U.S.C. § 1605A.

4

(2d Cir. Oct. 23, 2014).[2]  The Second Circuit explained that "[w]hether attachment of the EFTs under [FSIA] § 1610(g) is possible turns . . . on whether the blocked EFTs at issue are 'property of' North Korea or 'the property of an agency or instrumentality of' North Korea." Id. at *5.  FSIA § 1610(g) "provide[s] that 'property' of a foreign state is subject to execution, and absent any indication that Congress intended a special definition of the term, 'property' interests are ordinarily those created and defined by state law." Id. at * 6.  Relying on its prior decisions interpreting the relevant New York state law, the Second Circuit held that

> an EFT blocked midstream is "property of a foreign state" or "the property of an agency or instrumentality of such a state," subject to attachment under 28 U.S.C. §1610(g), only where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT directly to the bank where the EFT is held pursuant to the block.

Id. (emphases added).[3]

Hausler v. JP Morgan Chase Bank, N.A. extended Calderon-Cardona's holding to claims under TRIA § 201.  In Hausler, the petitioners sought to enforce a judgment obtained against the Republic of Cuba ("Cuba") by attaching blocked EFTs pursuant to TRIA § 201. No. 12-1264, 2014 WL 5420141, at *1 (2d Cir. Oct. 27, 2014).  Consistent with its decision in Calderon-Cardona, the Second Circuit concluded that state law governs whether a blocked EFT is subject to attachment under TRIA § 201, id. at *2, and held that

---

[2] The petitioners in Calderon-Cardona also sought relief pursuant to FSIA § 1610(f)(1), but the Second Circuit held that "a party's right to proceed under that section was eliminated by a valid executive order that no subsequent presidential administration has rescinded." Id. at *7.
[3] Calderon-Cardona did not address the applicability of this holding to claims under TRIA § 201. The petitioners in Calderon-Cardona were not entitled to attach the EFTs pursuant to TRIA § 201 because North Korea was no longer designated as a state sponsor of terrorism at the time the petitioners' judgment was entered. See id. at *4-5.

> in order for an EFT to be a "blocked asset of" Cuba under TRIA § 201(a), either Cuba "itself or an agency or instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the EFT directly to the bank where the EFT is held pursuant to the block."

Id. at *3 (quoting Calderon-Cardona, 2014 WL 5368880, at *6). The Second Circuit reversed the district court's grant of summary judgment in favor of the petitioners because "it [was] undisputed that no Cuban entity transmitted any of the blocked EFTs . . . directly to the blocking bank." Id.

Under Calderon-Cardona and Hausler, petitioners can attach only those blocked EFTs that the respondent banks received <u>directly</u> from Iran or one of its agencies or instrumentalities. Here, it is undisputed that none of the blocked EFTs at issue was transmitted to respondents directly by Iran or one of its agencies or instrumentalities. (See Petitioners' Supplemental Filing Regarding Motion for Summary Judgment at 2 ("The information provided by respondent [HSBC] provides that neither the originators nor the originating banks are agencies or instrumentalities of Iran."), ECF No. 103 in 11-cv-1607; Petitioners' Supplemental Filing Regarding Motion for Summary Judgment at 2 ("The information produced by respondent [Nordea] provides that neither the originator nor the originating bank are agencies or instrumentalities of Iran."), ECF No. 59 in 11-cv-1610; see also ECF Nos. 39 Ex. 15 and 64 Ex. 15 in 11-cv-1607; ECF No. 27 Ex. 14 in 11-cv-1610.)

III.  CONCLUSION

For the reasons set forth above, petitioners' motions are DENIED. The Amended Petitions are subject to dismissal (at least) as to those EFTs that are the subject of the present motions. Respondents may file motions for summary judgment not later than **December 9, 2014**. The motions may be as to those EFTs that are the subject of the present motions, as well as to all other EFTs that do not qualify as property of the judgment debtors under state law. Any oppositions must be filed not later than **December 23, 2014** (no replies).

SO ORDERED.

Dated:   New York, New York
         November 18, 2014

                                         _____
                                              KATHERINE B. FORREST
                                              United States District Judge